Judge Tucker,
after stating the case. The suggestion in the bill of review, that the defendants in the original suit were infants, and incapable of defending their cause judicially, was, I conceive, a sufficient ground for the court to have inquired into that fact; and, if they had no guardian already appointed, a guardian, ad litem, ought to have been assigned them by the court. I therefore think the cause ought to be remanded to the court of chancery, that a guardian may be there assigned to the infants, (if such there are now,) and such further proceedings had, as may be thought necessary and proper for their full defence, as in the case of Lees v. Braxton.(a)
If it be necessary at this time to say any thing on the merits of this cause, I would observe a circumstance not noticed by the counsel in the cause, which occurs upon, inspection of Lord Fairfax's grant or patent to George W. Fairfax. From some cause or other, it hath an impossible date, for it bears date on the eleventh day of Decern *134 in the thirty-third year of the reign of George II. anno domini one thousand seven hundred and forty-seven. This latter year corresponds with the twenty-first year of tkat king’3 reign, and not with the thirty-third. The patent is alleged not to have been recorded in Lord Fair-fax’s office, but that there is a blank leaf referred to at the foot of the patent, as the place pf registration. On this circumstance great stress was laid in the argument, as creating a presumption of fraud, in respect to this patent. The two circumstances of the date, and of the omission to record it, make it proper, in my opinion, (if the chancellor should entertain any doubt upon the subject,) that a jury should be empannelled at the bar of the court of chancery, to try an issue, to be made up between the parties, whether this grant or patent, be the deed of Lord Fairfax, or not. Perhaps it may be found to have been recorded in the record books corresponding with the 33d year of George II.
With regard to the exception taken by a member of the court to the conveyance from Wilson Miles Cary to Stanton the complainant in the original bill; (he being only one of three trustees, named in the will of George W. Fair-fax ; the other two (though long since dead) not appearing by the record to have renounced the trust, nor, indeed, to be dead;) I conceive that a court of equity ought to supply any defect in the execution of the power given by the will, as far as circumstances will permit; it not being controverted that the conveyance to Stanton was for a good and valuable consideration, and (in all other respects) conformable to the intention of the testator, in creating the trust.(a) For this purpose, I think, the proper course will be to direct the residuary devisee of the real estate of George W. Fairfax, in Virginia, to ke made a party defendant in this suit, to show cause, if r _ 1 7 any he can against the validity of that conveyance. J °
Judge Roane.
In this case several objections as^ *135 taken on the part of the appellants; some of which go to the merits of the case, and others to the form of the proceedings.
As to the merits, it is first objected that the evidence of the grant to George William Fairfax was inadmissible, and not sufficient; the witness having never seen Lord Fairfax write, and only judging of his signature by com - parison of the hand-writing. It is unnecessary to go into the general doctrine upon this point, as it is held,(a) that a deed or above thirty years’ standing requires no further proof of its execution than the bare production, where the possession has gone according to the provisions thereof, and there is no apparent erasure or alteration upon the face of it. In the case before us, this possession is pioved, to my satisfaction, by several witnesses, to have existed in favour of George William Fairfax, under whom the appellee claims.
2dly. It is said that, if the unregistered patent of George William Fairfax can prevail against the patent of Roberts, the question is purely legal, and cannot be relieved on by a court of equity. The answer is, on the contrary, that, admitting that George William Fairfax's deed cannot avail him at law for want of registration, it must avail him in equity, on the ground, which is fully proved, that Roberts knew of the existence of that patent, and of the possession of George William Fairfax by his tenants, before he made his entry ; that, therefore, a registration was, as to him, unnecessary, and he proceeded, consequently, against conscience, to locate granted land which he knew belonged to another.(1)
*136 3dly. It is said that this omission to register the deed from the act of George William Fairfax, who himse^ was a principal clerk in Lord Fairfax’s office ; that ** was a fraud in him, and, therefore, the patent should not avail him. The answer is that it is not proved that George William Fairfax was the clerk. It is only stated (hy D. Field) that William Fairfax, who was probably the father of George William Fairfax, was the principal clerk about the time of the emanation of the patent in question.
4thly. It is objected that the sale by Cary alone, without the concurrence of the other executors, (or, to this purpose, trustees,) was not valid.
As to this point, the doctrine seems to be that there is a distinction between powers given to executors in their official characters, and to A., B. and C., who are also made executors; that, in the first case, all the executors who qualify answer the description, and may execute the power; but that, in the last case, a part of them cannot act, because a personal confidence was reposed in them, only in conjunction with the others. This point seems to have been taken by counsel, arguendo, in 1 Wash. 340. Watson v. Alexander; and in the case ot Johnson v. Thomson,(b) it was decided in this court, that a sale by . 3 one executor under a power m a will was not-good; it not being found that the other executor was dead or refused to act.
In the case before us, the power to sell is granted, it is *137 true, in the original will of George William Fairfax, to his executors, and then he goes on to name seven persons as Ms executors ; but in his codicil the testator revokes and makes void the devise last mentioned, and devises the same land to George Washington, George Nicholas, and Wilson Miles Cary, by name, as trustees to sell, &c. and also appointed these three gentlemen his executors in the United States. Wilson Miles Cary only conveyed the land in question, and only qualified as executor in America ; and it is not shown that the others were dead, or had refused to take upon them the execution of the will of the testator. If, therefore, Mr. Cary had acted, in this case merely under a general power to executors to sell, it would be at least doubtful whether, under the decision in Johnson v. Thomson, it ought not at least to have been shown that the other .executors were dead, .or had refused to act % but, in this case, Mr. Cary was emphatically one of the trustees under the codicil of George William Fairfax. As to trustees, it is said, 2 Fonb. 184. that “ there is a difference between them and executors; for that trustees have ail equal power, interest and authority, and cannot act separately, as executors may, but must join, both in conveyances and receipts,” &c. Or the general principle, therefore, the law is clear against the validity of this conveyance ; and that principle is greatly strengthened, in the present case, by the consideration that .the testator has taken unusual pains in his codicil to provide, that, if one or more of his trustees should d.ie before the trust is fully accomplished, then others should be appointed by the survivors, who jointly with them should finish the execution of the trust. This,, then, is emphatically a case in which one of the trustees only was not competent to act; and I am sorry to be obliged to be of opinion to reverse the decree on this ground, as the merits seem dearly, in other respects, with the appellee.
*138 As to the power of a court of chancery to aid a defective execution of a power ; while that is readily admitted, I do not think it extends to a case like the present, where there is a want of competency in the person acting, to execute the power, except in conjunction with others.
Some minor objections were made, which I will now briefly notice ; though my opinion on the point just mentioned renders it unnecessary.
It is objected that the decree is erroneous in decreeing the -heirs and widow of Roberts to account for the profits of the land in the lifetime of the husband and ancestor. When it is recollected that his widow stood also in the relation of an executrix to him, I should incline to understand this decree distributively, and that each of the appellants are decreed pro ut their several and respective characters.
Again, it is objected that the decree is erroneous in directing commissioners, instead of a jury, to state an account of. the profits of the land, and report it to the court.
It is true, that in the case of Eustace v. Gaskins, 1 Wash. 188. it is said that the profits, of the land, being in the nature of damages, should have been ascertained by a jury, and not by commissioners. But in Kennedy v. Baylor, (ibid. 162.) a decree of the court of chancery, affirming one of the county court of Berkeley, was affirmed by this court, although it was objected by counsel, and admitted to be' the fact in the report of the case, that damage and injury done to the land while in the possession of the plaintiff was valued by commissioners instead of a jury. This is a much stronger case, against the solidity of the objection ñow taken, than either the case of Eustace v. Gaskins, or the case now before us: and, upon the whole, I am inclined to think that, if the general practice and usage of, the court does not in general go. the length of the principle decided in Kennedy *139 v. Baylor, (and, I think, ought not,) yet that that usage and practice is in conflict with the principle decided in Eustace v. Gaskins : such practice, too, is attended with great convenience and utility. I can see no difference, ® . as to this point, between the profits or land, and oí negroes ; and the profits of the latter are always estimated, and reported upon, by commissioners, and not by a jury.
As to what is said respecting the proceeding against such of these defendants as are infants, without appointing them a guardian; I concur that it was irregular. Had their interests been attended to in this particular, the whole testimony and merits of the case might have been varied in their favour.
On these grounds, I am of opinion that the decree should be reversed, and the bill dismissed; but without prejudice to any other suit which the appellee may be advised to institute to perfect his title ; as his case is probably' a hard one, and probably the consideration he paid has enured to the benefit of George William Fairfax’s representatives.
Judge Fleming.
In giving my opinion in this case, I must premise that, with respect to the patent of George W. Fairfax bearing an impossible date, to wit, the 33d year of the reign of Geo. II. anno domini 1747, I think it immaterial, as the date with respect to the day of month and year of the Christian ara is correct.
A number of authorities have been cited to show that, although equity will not supply the non-execution of a power, yet it will supply any defect in the execution of a power, provided the same be for a good or valuable consideration. In the case before us, the trust or power was imperfectly executed; the conveyance of the land in question having been executed by one trustee only, instead of three; but it being for a valuable consideration, ■x court of equity may, I conceive, with propriety, supply the defect; so far, at least, as respects the appellants, *140 wh0 (we all agree) have no right to the land in contro* versy. The title, then, must either be in the appellee Stanton, or in the residuary legatees of George W. Fair-fax ’ ancb by making them parties to the suit, neither injustice nor inconvenience can, in my apprehension, arise to any person or persons interested in the decision of the cause.'
Ón thése grounds, a majority óf the court have agreed that the fallowing decree shall be entered :
' “ The court, is! df opinion that the said decrees are erroneous, in this, that it appears, by the bill for the rehearing of the cause, that some of the defendants, representatives of the said Joseph Roberts, deceased, were infants, and against whom the said decree, of the twenty-seventh day of September, 1804, Was final ás to the merits, and no guardian ad litem had been appointed to defend them: therefore, it is decreed afid, ordered, that the same be reversed and annulled, and that the appellee pay to the appellants their costs by them expended in the prosecution of their appeal aforesaid here. And it is .ordered that the cause be remanded to the said court of chancery, that a guardian ad litem may be assigned to such of the defendants as may now appear to be infants; and that the residuary legatee, or legatees, under the will of the said George W. Fairfax, (in the proceedings mentioned,) of his real estate in Virginia, be made a party, or parties defendants, to show cause, if any they can, against the validity of the conveyance executed by the defehdailt William M. Cary, to the said William Stanton, the complainant in the original bill, for the. lands Which are the subject of this controversy ; and that payment of the rents arid profits of the said lands be apportioned among the widow and children of the said Joseph Roberts, according to their respective interests claimed therein; provided the right to the land in controversy be finally decreed against them, in favpur of the appellee William Stanton

 Ms. April, 17. 1805.

 1 Fonb, c. 1 s. 8. note.(u), and c. 4. s. 25. note (h) and Powell on Powers, p. 160. 163. 165. 170. 187. 204. and the cases there referred to.

 Peake on Ev. 110. Bull. N. P. 256.

 Note by the Reporter. As to this point, Botts contended that Roberts had not such knowledge of Faivfaj?s patent as would bind him ; notice not having been given, by actually showing him the, patent, nor by a party intevested in the title, nor in the course of his proceeding to gel his patent from the commonwealth; all which circumstances must concur, to make the notice obligatory; in support of which position, he cited Sugden’s Law of Vendors, p. 490. 1 Vern. 286. 3 Ves, jun. 478. Jolland v. Stainbridge. 2 Eq. Cas. Abr. 682. 3 Atk. 294. 392, 2 Atk. 242. 275. and 2 Vesey, 363.
*136 Williams, contra, insisted that Roberts’s knowledge, before he made his entry, of the existence of Fairfax’s patent, and of the jiossession by his tenants for many years, was amply sufficient on every principle. Besides, the doctrines relative to notice to purchasers in general, do not apply to the case of a person taking tip land, which, at the time, is settled and granted! for he js not authorized to lay his warrant on any land of that description.
It was contended, too, by Williams and Warden, that a patentee is not responsible for the clerk’s or register’s neglecting to record the patent, in which respect it differs from a common deed, the holder of which is hound lo have it recorded,

 Fall Term, 1804, Call's MS.